FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2006 SEP -7 PM 4: 23

CLERK_____
SO. DIST. OF GA.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| PATRICK BRINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CV405-51 |
| ) | |
| McARTHUR HOLMES; JOHNNIE ) | |
| WELCHER; and AYESHA SCOTT, ) | |
| ) | |
| Defendants. ) | |

### REPORT AND RECOMMENDATION

Defendants have filed a motion for summary judgment on plaintiff's claim that defendants violated his constitutional rights by failing to provide him with adequate medical care. Doc. 33. Plaintiff has filed multiple responses opposing the motion. Docs. 47 (plaintiff's "motion to add evidence," which the Court in an Order (doc. 49) treated as a response to the motion for summary judgment), 51, 55. For the following reasons, the Court recommends that defendants' motion for summary judgment be GRANTED and that plaintiff's complaint be DISMISSED.

### I. BACKGROUND

On December 1, 2003, plaintiff arrived at the Chatham County

Detention Center (or "jail") following his arrest. Doc. 34, Ex. I. There, plaintiff informed prison health personnel of several pre-existing medical conditions, including kidney stones, a ureteral stent, and past treatment for mental health problems. Id. Plaintiff's complaint is related to his perceived lack of proper medical care with respect to his kidney stone ailment. Doc. 1.

On April 14, 2003, plaintiff presented to the emergency room at St. Joseph's Hospital in Savannah, Georgia, complaining of significant left flank pain and actively vomiting while in the triage area. Doc. 34, Ex. A. Plaintiff was diagnosed as having a 7mm kidney stone[1] and was referred to a urologist, Dr. Thomas Shook. Id. at Ex. A; Ex. B. On April 15, 2003, Dr. Shook performed surgery on plaintiff to implant a ureteral stent. Id. at Ex. C. Though instructed to follow up with Dr. Shook to have the stent removed, plaintiff did not do so. Id. at Ex. D.

On August 19, 2003, plaintiff again presented to the emergency room at St. Joseph's, complaining of lower back pain. Doc. 34, Ex. D. Plaintiff reported that the strings holding the stent in place had disappeared

---

[1] Plaintiff informed the emergency room physician that he had passed a 6mm kidney stone two weeks earlier. Doc. 34, Ex. A.

2

following an altercation with the police two months earlier, when plaintiff had been struck in the abdomen. Id. The emergency room physician consulted Dr. Shook, who recommended that plaintiff be discharged with instructions to schedule a follow-up appointment for a lithotripsy[2] procedure. Id. Plaintiff again failed follow up with Dr. Shook. Id. at Ex. E.

On October 9, 2003, plaintiff again presented to the St. Joseph's emergency room, complaining of pelvic pain and vomiting and demanding that the stent be removed. Doc. 34, Ex. E. Dr. Shook again advised an immediate follow-up. Id. Plaintiff visited the emergency room again on November 2, 2003. Id. at Ex. F. Dr. Shook stated that the surgery could not be performed in the emergency room because of inadequate equipment. Id. He was given the same instructions to follow-up at Dr. Shook's office. Id.

Finally, on November 3, 2003, plaintiff went to Dr. Shook's office for the lithotripsy and stent removal he needed. These procedures were evidently not performed because plaintiff stole a vehicle from an employee

---

[2]"The crushing of a stone in the renal pelvis, ureter, or bladder, by mechanical force or sound waves." Stedman's Medical Dictionary 990 (26th ed. 1995).

in the medical building where Dr. Shook had his office. Doc. 34, Ex. H; Ex. M. A criminal warrant for plaintiff's arrest was issued on November 25, 2003 (Doc. 34, Ex. H), and plaintiff was taken to the Chatham County Detention Center on December 1, 2003. Doc. 34, Ex. J.

Upon his arrival at the jail, plaintiff discussed his medical history with Nurse Williams, who conducted a receiving/screening interview. Doc. 34, Ex. I; Ex. K. Plaintiff informed Nurse Williams of his kidney problems, including his kidney stones and the ureteral stent as well as his previous treatment for mental health issues. Id. at Ex I. She referred him for examination by Dr. Susan Reinheimer and completed a mental health referral. Id. at Ex. J.

Dr. Reinheimer evaluated plaintiff on December 4, 2003. Doc. 34, Ex. L. Plaintiff discussed his previous kidney problems and told her that he was Dr. Shook's patient. Id. Dr. Reinheimer also noted plaintiff's stent. Id. On December 9, 2003, Dr. Reinheimer contacted Dr. Shook, who informed her of plaintiff's prior treatment and the fact that plaintiff's planned lithotripsy and stent removal were thwarted by plaintiff's stealing narcotics and a nurse's keys and car. Id. at Ex. M. Dr. Shook informed Dr.

Reinheimer that further treatment for plaintiff's kidney problems should be delayed until his mental health problems were under control and that emergency treatment was only warranted if he had a fever. Id.

At this time, Dr. Reinheimer also referred plaintiff for an evaluation by the mental health department. Doc. 34, Ex. J. A psychiatrist, Dr. Stockfish, interviewed plaintiff, during which time plaintiff expressed a desire to commit suicide. Id. Plaintiff was placed on suicide watch from December 9, 2003 to December 15, 2003 and was under constant surveillance. Id. In addition, he was housed in the prison infirmary from December 22, 2003 to December 29, 2003 and was constantly observed by medical staff. Id.

On February 5, 2004, Dr. Reinheimer again examined plaintiff following his complaints of vomiting. Doc. 34, Ex. J. He was monitored by health staff and seen again on February 25, 2004. Id. At that time, it was determined that plaintiff's mental health was still not stable enough for treatment of his urinary problems. Id. In an effort to stabilize his mental health, Dr. Hunter, another psychiatrist, placed plaintiff on Prozac on February 26, 2004. Id.

Nurse Scott, a defendant in this action, was responsible for dispensing plaintiff's medications and administered his Prozac from March 1, 2004 to March 27, 2004 and again from May 7, 2004 to May 18, 2004. Doc. 34, Ex. J. Nurse Scott was not qualified to "triage, examine, or treat the inmate," as she was a certified medical assistant. Id. When an inmate complained of a medical problem, Scott was responsible for notifying the sick call nurse or medical unit. Id. Nurse Scott avers that she does not recall plaintiff ever making any complaint to her at any time regarding his medical condition. Id. at Ex. K. Plaintiff asserts in an unsworn submission that he showed urine in his blood to Nurse Scott on a daily basis and voiced his discomfort. Doc. 47.

There is no evidence in the record that plaintiff spoke directly with defendants Holmes or Welcher, who are jail administrators, regarding his medical condition. In addition, there is no evidence that plaintiff submitted any grievance or complaints to medical or jail staff concerning his medical problems.[3]

---

[3] In his complaint, plaintiff states that he "wrote medical request after medical request" and wrote grievances concerning his medical problems. Doc. 1. In his "motion to add evidence," plaintiff asserts that he wrote grievances to Holmes and Welcher and that several third parties, including his mother, aunt, sister, girlfriend, and uncle, called the jail to inform Holmes and Welcher of plaintiff's medical problems. Doc. 47. Plaintiff

Plaintiff filed a "motion to add evidence," in response to defendants' motion for summary judgment. Doc. 47. In this submission plaintiff attaches the only evidentiary support within all of his pleadings in this case: copies of various medical records from his file at Baldwin State Prison. These records detail the medical consultations conducted by the staff at that prison, which is a separate state facility unaffiliated with the county-employed defendants named in plaintiff's complaint.

## II.   SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure requires a court to enter summary judgment where the record, taken as a whole, establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "An issue of fact is 'material' if it might affect the outcome of the case under the governing laws . . . . It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1518 (11th Cir. 1990) (citations omitted).

---

submits no affidavits or other evidence to support these naked contentions. Furthermore, the medical files attached to his "motion to add evidence" do not contain any grievances filed by plaintiff concerning his medical problems.

The moving party "always bears the initial responsibility of informing the [trial] court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has shown that the party bearing the burden of proof at trial lacks evidence on an essential element of his claim, the burden of production shifts to the nonmoving party "to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Rule 56(e)).

"Although reasonable inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, that party 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment' to show that there is a genuine issue for trial." Tidmore v. BP Oil Co./Gulf Products Div., 932 F.2d 1384, 1387 (11th Cir.) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). A mere scintilla of evidence supporting the non-moving party's position will not fulfill its burden. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.

1990). The Court must consider the entire record in the case, not just those portions of the record that have been singled out for attention by the parties. Baker, 903 F.2d at 1515.

## III. ANALYSIS

Plaintiff alleges that while he was a pretrial detainee at the Chatham County Jail, defendants violated his constitutional rights by failing to provide him with adequate medical care. Doc. 1, 55. The Eighth Amendment requires prison officials to provide necessary medical care "for those whom it is punishing by incarceration." Estelle v. Gamble, 428 U.S. 97, 103 (1976); Campbell v. Sikes, 169 F.3d 1353, 1362 (11th Cir. 1999). Although the Eighth Amendment's prohibitions against cruel and unusual punishment apply only to convicted prisoners and not to pretrial detainees, it is well settled that the due process clause of the Fourteenth Amendment guarantees detainees the same level of protection mandated by the Eighth Amendment for convicted persons. Hamm v. DeKalb County, 774 F.2d 1567, 1573-74 (11th Cir. 1985) ("states may not impose on pretrial detainees conditions that would violate a convicted prisoner's eighth amendment rights."). Thus, the standard for providing medical treatment

to those incarcerated following a conviction or held in pretrial detention is the same under both the Eighth Amendment and the due process clause. Lancaster v. Monroe County, 116 F.3d 1419, 1425 n. 6 (11th Cir. 1997); Hamm, 774 F.2d at 1574; see Marsh v. Butler County, 268 F.3d 1014, 1024 n. 5 (11th Cir. 2001) (en banc) (assuming, but not deciding, that the Eighth Amendment "deliberate indifference" test applies to a pretrial detainee's Fourteenth Amendment due process claim).

The Supreme Court has held that Eighth Amendment claims have both an objective and a subjective component: (1) the prisoner must allege a deprivation that is "sufficiently serious" to implicate constitutional concerns and (2) the prisoner must demonstrate that the prison official had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 297-98 (1991)). "Deliberate indifference," the requisite state of mind for all Eighth Amendment claims except excessive force, requires proof that the defendant disregarded a substantial risk of serious harm of which he was subjectively aware. Farmer, 511 U.S. at 829, 837 (rejecting an objective test and adopting a subjective one). See Miller v. King, 384 F.3d 1248, 1261 (11th Cir. 2004).

The Supreme Court has noted that an official's deliberate indifference to an inmate's serious medical needs could be manifested by a "prison doctor['s] . . . [inappropriate] response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." Estelle, 429 U.S. at 104-05.  The Court was careful to caution, however, that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. at 106.  For example, "an inadvertent failure to provide adequate medical care" does not violate a prisoner's rights. Id. at 105. See Miller, 384 F.3d at 1261 ("even gross negligence does not satisfy [the] standard").

Interpreting Farmer and Estelle, the Eleventh Circuit requires plaintiff to prove three components of deliberate indifference: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

### A.   Defendants Holmes and Welcher

Plaintiff has alleged that Holmes and Welcher knew of his pain and suffering but "did not act aggressively enough to prevent the pain." Doc.

11

51. Plaintiff states that he sent them grievances, that his relatives and friends called them to alert them of "the situation," and that Holmes and Welcher said that plaintiff had to wait "until he [got] out." Doc. 47. Plaintiff, however, has not gone beyond his own pleadings to offer evidence showing that his friends or relatives actually alerted the defendants, or that he actually submitted such complaints or grievances. Defendants have presented contrary evidence that plaintiff did not submit complaints or grievances. Doc. 34, Ex. J; Ex. K. Therefore, plaintiff has not met his burden under Rule 56 and <u>Celotex</u> to defeat defendants' motion for summary judgment. He simply has not shown that Holmes or Welcher had subjective knowledge that his medical needs were not being attended to, as required to prove deliberate indifference. <u>See</u> <u>McElligott</u>, 182 F.3d at 1255.

Furthermore, even if plaintiff could prove subjective knowledge by Holmes and Welcher, he has not shown that they disregarded a risk to his health by conduct that is more than merely negligent. The record clearly shows that plaintiff received constant medical attention. <u>See, e.g.</u>, Doc. 34, Ex. I (initial screening upon admission); Ex. J (detailing plaintiff's mental health treatment); Ex. M (progress notes). "[W]hen a prison inmate has

received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989); see Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir.1985) (plaintiff received "significant" medical care while in jail, and although plaintiff "may have desired different modes of treatment," care provided "did not constitute deliberate indifference"). There is no evidence that Holmes and Welcher interfered with or otherwise dictated the course of plaintiff's treatment. While plaintiff did have a serious medical condition with respect to his kidneys, medical staff at the prison chose to first stabilize plaintiff's mental health condition, another serious medical problem, following the advice of his urologist, Dr. Shook. Plaintiff has not alleged or attempted to prove that this course of action was inappropriate or disregarded his basic medical needs. At most, following the advice of the urologist in stabilizing plaintiff's mental health prior to addressing his urinary and kidney problems amounts to "mere negligence" of the sort that does not give rise to liability under the Eighth Amendment. See Estelle v. Gamble, 429 U.S. at 107 (a dispute over the appropriate form of treatment "is a classic example of a matter for medical judgment" and does not "represent cruel

and unusual punishment"); <u>Adams v. Poag</u>, 61 F.3d 1537, 1545 (11th Cir. 1995); <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991) (difference in opinion as to diagnosis or treatment insufficient to establish deliberate indifference claim). Plaintiff has failed to show that the medical treatment he received at the Chatham County Jail rises to the type of care that would constitute deliberate indifference. Defendants Holmes and Welcher therefore are entitled to summary judgment.

### B. Defendant Scott

Defendant Scott was a certified medical assistant employed by Prison Health Services, a private company that contracts with the county to provide medical services at the Chatham County Jail. Defendant Scott is entitled to summary judgment in her favor. To survive defendant's motion for summary judgment, plaintiff must produce evidence sufficient to create a genuine issue of material fact about whether Nurse Scott (1) had subjective knowledge of plaintiff's serious medical condition, and (2) was deliberately indifferent to that condition. See <u>Lancaster v. Monroe County</u>, 116 F.3d at 1425.

Plaintiff has failed to create a genuine issue of material fact as to either inquiry. Nurse Scott has submitted evidence that plaintiff did not complain of his condition to her or to anyone else. See doc. 34, Ex. J; Ex. K. Plaintiff alleges that he showed Nurse Scott blood in his urine and complained of discomfort. Doc. 47. Plaintiff, however, offers no evidentiary support for this contention, as required by Rule 56, and on a motion for summary judgment such unsupported factual allegations cannot be considered true. Plaintiff has thus failed to show that an issue of material fact exists in relation to his claim against defendant Scott.

Even if plaintiff could show that Nurse Scott had a subjective awareness of his need for urgent medical treament, plaintiff cannot show that she was deliberately indifferent to his condition. Nurse Scott's job, as a certified medical assistant, was to dispense medication, report an inmate's medical complaints to a sick call nurse or to the medical unit, and advise the inmate to complete a medical request form. Doc. 34, Ex. K. While he alleges that Nurse Scott "did not do anything in her power to bring [his] medical condition to a higher superior[']s attention besides the other defendants," (doc. 47) he has not shown, through affidavit or other

evidence, that she failed to do so. In fact, his allegation that she reported his condition to other defendants in this case (including Dr. Reinheimer and Prison Health Services), if true, would demonstrate that Nurse Scott actually fulfilled her duty under the Eighth Amendment. Nurse Scott, if she in fact was aware of any medical problem, cannot be found deliberately indifferent by reporting such problems to other officials, which was her sole duty in that situation. However, as noted before, plaintiff has not even shown that Nurse Scott was aware of plaintiff's medical complaints. Therefore, Nurse Scott is entitled to judgment as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that summary judgment is appropriate for all defendants, as plaintiff has not shown any genuine issue of material fact and defendants are entitled to judgment as a matter of law. The Court recommends that defendants' motion for summary judgment be **GRANTED** and that this case be **DISMISSED**.

**SO REPORTED AND RECOMMENDED** this  7th  day of September, 2006.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| PATRICK BRINSON,<br><br>      Plaintiff,<br><br>v.<br><br>McARTHUR HOLMES; JOHNNIE WELCHER; and AYESHA SCOTT,<br><br>      Defendants. | Case No. CV405-51 |

## ORDER

After a careful de novo review of the record in this case, the Court concurs with the Magistrate Judge's Report and Recommendation, to which objections have been filed. Accordingly, the Report and Recommendation of the Magistrate Judge is adopted as the opinion of the Court.

**SO ORDERED** this _____ day of _____, 2006.

 

_____
B. AVANT EDENFIELD
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| PATRICK BRINSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>McARTHUR HOLMES; JOHNNIE )<br>WELCHER; and AYESHA SCOTT, )<br>)<br>Defendants. ) | Case No. CV405-51 |

## ORDER

After a careful de novo review of the record in this case, the Court concurs with the Magistrate Judge's Report and Recommendation, to which no objections have been filed. Accordingly, the Report and Recommendation of the Magistrate Judge is adopted as the opinion of the Court.

**SO ORDERED** this ____ day of _____, 2006.

> B. AVANT EDENFIELD
> UNITED STATES DISTRICT JUDGE
> SOUTHERN DISTRICT OF GEORGIA